NO. 14-3136

––––––––––––––––––––––

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

––––––––––––––––––––––

UNITED STATES OF AMERICA,

Appellee,

v.

GEORGE THUNDERHAWK,

Appellant.

––––––––––––––––––––––

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

––––––––––––––––––––––

ADDENDUM

––––––––––––––––––––––

PAUL H. MYERCHIN (ND #05412)
Bormann, Myerchin,
Monasky & Espeseth, LLP
418 E. Broadway Avenue - Suite 240
Bismarck, ND 58501
Phone: (701) 250-8968
E-mail: pmyerchin@bmmelaw.com
Attorney for George Thunderhawk

# TABLE OF CONTENTS

Order Denying Defendant's Motion to Suppress Evidence . ADD-01

Final Instructions (Partial) . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD-13

Judgment in a Criminal Case . . . . . . . . . . . . . . . . . . . . . . . . ADD-15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO SUPPRESS EVIDENCE** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:13-cr-120 |
| George Thunderhawk, | ) | |
| | ) | |
| Defendant. | ) | |

The Defendant, George Thunderhawk, has been charged with the offense of abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(5) and 1153. See Docket No. 4. On March 24, 2014, Thunderhawk filed a motion to suppress. See Docket No. 19. Thunderhawk contends he was subjected to an unlawful custodial interrogation in violation of his Fifth Amendment constitutional rights. As a result, Thunderhawk seeks suppression of any and all statements made to law enforcement officers on the basis the statements were made in violation of Thunderhawk's *Miranda* rights and/or the statements were involuntarily made. The Government filed a responsive brief in opposition to the motion on March 27, 2014. See Docket No. 21. Thunderhawk filed a reply brief on April 3, 2014. See Docket No. 23. A suppression hearing was held on April 16, 2014, in Bismarck, North Dakota. For the reasons set forth below, the motion to suppress is denied.

I.   **BACKGROUND**

On April 17, 2013, FBI Special Agent Ryan O'Neil interviewed V.R., a 14-year-old female, who reported that sometime in 2008, when she was approximately 8 years of age, she was inappropriately touched by Thunderhawk. V.R. indicated she and her mother lived in a residence in Cannonball, North Dakota, in 2008. V.R.'s mother knew Thunderhawk and he would often

visit their residence. On one particular night while asleep in her room, V.R. awoke to find someone lying behind her, reaching down and touching her vaginal area. The person touched V.R.'s vaginal area under the shorts she was wearing, but on top of her underwear. The touching occurred for approximately one to two minutes. V.R. was scared and pretended to sleep until the person got up and left her room. V.R. waited for a few moments, then got up, crept to her bedroom door, and was able to see Thunderhawk sitting on the couch in the living room. Thunderhawk eventually left the residence.

On April 18, 2013, at approximately 10:00 a.m., the day after interviewing V.R., FBI Agent O'Neil approached Thunderhawk at his residence in Cannonball, North Dakota, and asked if he was willing to talk with FBI Agent O'Neil and Bureau of Indian Affairs (BIA) Agent David Lawrence. Thunderhawk indicated he was willing to talk to them, but needed to use the restroom first. The parties agreed that when Thunderhawk was finished using the restroom, he would meet the agents in FBI Agent O'Neil's unmarked Chevy Tahoe SUV, which was parked outside the residence. Approximately ten minutes later, Thunderhawk exited his residence, approached O'Neil's vehicle, and entered the front passenger seat of the agent's vehicle. BIA Agent Lawrence sat in the back seat of the vehicle. The doors were not locked after Thunderhawk entered the vehicle and remained unlocked throughout the interview.

FBI Agent O'Neil began the interview by providing Thunderhawk with an advisement that Thunderhawk's statement to the agents was voluntary, and Thunderhawk could end the interview and exit the vehicle at any time. FBI Agent O'Neil further advised Thunderhawk he was not under arrest and, regardless of what he reported in his interview, he was not going to be placed under arrest that day. Thunderhawk indicated to the agent he understood the advisement and agreed to answer questions.

Thunderhawk was asked specifically about the 2008 event reported by V.R. Thunderhawk indicated he knew V.R. and her mother, Lillian Plenty Chief, and he had a casual dating affair with Plenty Chief during the time period in question. When asked if he touched V.R. in a sexual manner, Thunderhawk initially denied the allegation and then suggested that perhaps someone else was the culprit. Thunderhawk said he recalled a different man may have been in bed with V.R.

Thunderhawk then indicated he was drinking heavily during the time period and did not think he had touched V.R., but that it was possible something happened. The agents reminded Thunderhawk they just wanted to know the truth about what occurred. Eventually, Thunderhawk revealed he did recall the event with V.R. Thunderhawk stated he remembered being in bed with V.R. and touching her, but did not realize what he was doing until later. Thunderhawk stated once he realized what he was doing, he stopped touching V.R. and left the room. According to FBI Agent O'Neil, the interview in the vehicle lasted approximately twenty (20) minutes. At the conclusion of the interview, Thunderhawk wrote a letter to V.R. apologizing for his actions. See Docket No. 25-2.

After Thunderhawk admitted the touching conduct, FBI Agent O'Neil turned on a recording device and summarized the details of the interview. Thunderhawk agreed with the summary. The recorded portion of the interview on April 28, 2013, last approximately five (5) minutes. See Docket No. 25-1. Before concluding the interview, FBI Agent O'Neil asked Thunderhawk if he was willing to do a polygraph examination at a later date, to which Thunderhawk agreed. Thunderhawk then exited the agent's vehicle and returned to his residence. FBI Agent O'Neil and BIA Agent Lawrence then left the area.

On May 20, 2013, FBI Agent O'Neil contacted Thunderhawk by telephone and inquired whether Thunderhawk was still willing to participate in a polygraph examination. Thunderhawk

stated he was willing to do so and they agreed that FBI Agent O'Neil would pick up Thunderhawk at his residence the following day to travel to Fort Yates, North Dakota, for the polygraph. The examination was to be conducted at the police department in Fort Yates.

On May 21, 2013, FBI Agent O'Neil made contact with Thunderhawk at his residence in Cannonball as agreed upon the previous day. Thunderhawk was advised again that the polygraph examination was voluntary and he could refuse to participate. He was also informed that, even if he agreed to the polygraph, he could end the interview at any time and would be free to leave. Thunderhawk was again advised that regardless of his decision to participate in the polygraph examination or what statements he made, he would not be placed under arrest that day and would be given a ride back to his home in Cannonball. Thunderhawk agreed to the polygraph interview and accepted FBI Agent O'Neil's ride from Cannonball to Fort Yates. Thunderhawk was allowed to sit in the front passenger seat and was not handcuffed during the ride to Fort Yates.

Before the polygraph examination and interview began, Thunderhawk was verbally provided a notification of his rights and given *Miranda* warnings. Thunderhawk indicated he understood his rights and signed a FD-395, FBI Advice of Rights (Miranda) form. See Docket No. 25-3. During the polygraph examination conducted by FBI Agent Sitko, Thunderhawk denied touching V.R.'s genital or vaginal region. Thunderhawk was informed his reactions appeared to be deceptive and he needed to tell the truth. The total time spent on the polygraph examination was approximately one (1) hour.

Following the polygraph examination, Thunderhawk was interviewed by FBI Agents Sitko and O'Neil. At that time, Thunderhawk indicated he did recall the event with V.R. that occurred in 2008. Thunderhawk elaborated that he specifically entered the room that night because he knew V.R. was in the room and, after entering the room, he laid down beside and behind V.R. According

to Thunderhawk, he then reached around V.R. and touched her vaginal area, over her clothes, for approximately 30-60 seconds. Thunderhawk indicated he eventually got up and left because he knew what he was doing was wrong.

At the conclusion of the polygraph and interview, Thunderhawk was given a ride back to his residence in Cannonball by FBI Agent O'Neil as had been previously agreed. During the return trip, Thunderhawk was again allowed to ride in the front seat of the agent's vehicle, without any restraints.

## II.    LEGAL DISCUSSION

### A.    CUSTODY UNDER MIRANDA

Thunderhawk contends the statements made to law enforcement during the interview on April 18, 2013, were in violation of his Fifth Amendment rights. It is well-established that law enforcement officers must administer *Miranda* warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). A person is in custody when he is either formally arrested or his freedom of movement is constrained to a degree equivalent with formal arrest. United States v. Brave Heart, 397 F.3d 1035, 1038 (8th Cir. 2005). The *Miranda* custody test is an objective test; two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation and leave. Yarborough v. Alvarado, 541 U.S. 652, 663 (2004) (citing Thompson v. Keohane, 516 U.S. 99, 112 (1995)). In *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984), the Supreme Court affirmed that an objective test is preferable to a

subjective test because under the objective analysis the police do not have the burden of anticipating the frailties or idiosyncrasies of every person whom they question.

It is well-established in the Eighth Circuit Court of Appeals that the totality of circumstances must be analyzed <u>and</u> six factors are to be considered in determining whether an individual was held in custody: (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether there was a police-dominated atmosphere; and (6) whether the suspect was placed under arrest at the termination of the questioning. <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990); <u>United States v. Rainbow</u>, 380 F. Supp. 2d 1071, 1075 (D.N.D. 2005). However, the Eighth Circuit does not require the *Griffin* test be followed ritualistically in every *Miranda* case. <u>United States v. Czichray</u>, 378 F.3d 822, 827 (8th Cir. 2004). "When the factors are invoked, it is important to recall that they are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." <u>Id.</u> The most obvious way to demonstrate a person is not in custody is to tell him he is not in custody and may terminate the questioning at any time. <u>Id.</u> at 826; <u>see</u> <u>Brave Heart</u>, 397 F.3d at 1039.

To determine whether Thunderhawk was in custody at the time of the questioning, the Court must consider the *Griffin* factors and the totality of the circumstances that confronted the Defendant at the time of questioning.

**B.**   **GRIFFIN FACTORS**

The first *Griffin* factor to be considered is whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest.   In this case, Thunderhawk was specifically informed at the onset of the interview on April 18, 2013, that he was not under arrest, that he would not be arrested at the conclusion of the interview, and that he was free to leave at any time during the questioning.   The Court finds that this factor weighs in favor of a non-custodial setting for *Miranda* purposes.

The second indicia of custody is whether the suspect possessed unrestrained freedom of movement during the questioning.   In *United States v. Mottl*, the Eighth Circuit Court of Appeals found that questioning conducted at FBI headquarters was a non-custodial setting even though the suspect was led through an electronically locked door behind bulletproof glass and questioned behind a closed door.   946 F.2d 1366, 1367 (8th Cir. 1991).   In this case, Thunderhawk walked on his own accord to FBI Agent O'Neil's unmarked vehicle without the use of physical force or restraint from the agents.   The agents did not prohibit Thunderhawk from leaving the vehicle nor did they inform him he could not leave the vehicle.   Thunderhawk was not restrained or handcuffed during the questioning, and FBI Agent O'Neil's vehicle was unlocked throughout the interview. The Court finds Thunderhawk possessed unrestrained freedom of movement during the interview conducted by FBI Agent O'Neil and BIA Agent Lawrence on April 18, 2013.   This factor weighs in favor of finding Thunderhawk was not in custody during the interview process.

The third factor of a *Griffin* custody analysis is whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities.   During the interview, Thunderhawk spoke in a conversational manner to FBI Agent O'Neil and BIA Agent Lawrence in O'Neil's vehicle.   FBI Agent O'Neil never threatened Thunderhawk with force in order to obtain a

"confession." Thunderhawk did not refrain from answering questions or refrain from being questioned by the agents in the vehicle. The Court finds Thunderhawk voluntarily acquiesced to questioning by FBI Agent O'Neil and this indicia weighs in favor of finding Thunderhawk was not in custody during the interview on April 18, 2013.

The fourth indicia, whether the agents employed strong arm tactics or deceptive stratagems during questioning, also weighs in favor of a finding that the interview was conducted in a non-custodial setting. In *United States v. LeBrun*, FBI agents picked up the suspect at his place of employment, drove him in an unmarked police car to the station, and questioned him using psychological ploys. 363 F.3d 715, 718 (8th Cir. 2004). The agents told LeBrun that his financial resources would be drained through the trial process, that his family's reputation would be ruined, that the FBI had ample evidence against him, and brought individuals posing as the victim's brother and sister to the interview in order to get a confession out of LeBrun. Id. at 718-19. However, the court stated that the coercive aspects of a police interview are largely irrelevant and found that the defendant was not in custody. Id. at 721. In this case, the undisputed evidence reveals FBI Agent O'Neil spoke to Thunderhawk in a conversational manner and the interview was friendly. FBI Agent O'Neil did not raise his voice, accuse Thunderhawk of lying, or use any psychological ploys. The Court finds FBI Agent O'Neil did not employ psychological ploys, deceptive stratagems, or strong arm tactics during the questioning of Thunderhawk, which weighs in favor of finding Thunderhawk was not in custody during the interview.

The fifth *Griffin* factor is whether there was a police-dominated atmosphere. Here, Agents O'Neil and Lawrence approached Thunderhawk at his home, and Thunderhawk willingly entered Agent O'Neil's vehicle. Only FBI Agent O'Neil questioned Thunderhawk during the first interview. BIA Agent Lawrence was present in the backseat of the vehicle, but he did not

participate in the questioning of Thunderhawk.  Neither agent was dressed in uniform nor exposed their weapon.  The Court finds the agents approaching Thunderhawk at his residence and conducting the interview in FBI Agent O'Neil's vehicle was not a police-dominated environment.  The agents treated Thunderhawk in a respectful manner and the interview was not lengthy.  This finding weighs in favor of a non-custodial setting for the April 18, 2013, interview.

The remaining factor of a *Griffin* custody analysis is whether the suspect was arrested.  Unlike the defendant in *Griffin*, Thunderhawk was not placed under arrest during questioning or at the conclusion of the interview.  Instead, Thunderhawk exited FBI Agent O'Neil's vehicle and returned to his residence after the first interview.  The Court finds this factor also weighs in favor of finding the interview was conducted in a non-custodial setting.

The Court has carefully reviewed the entire record and all of the *Griffin* factors.  The Court expressly finds from the totality of the circumstances that Thunderhawk was not in custody when interviewed by FBI Agent O'Neil on April 18, 2013.  Thunderhawk was not handcuffed or restrained in any manner before, during, or after the interview with the agents.  Thunderhawk walked freely to the agent's vehicle which was parked outside Thunderhawk's residence.  FBI Agent O'Neil informed Thunderhawk at the onset of the interview he was not in custody, he was not under arrest, he would not be arrested following the interview, and he was free to terminate the interview at any time.  The interview was cordial and voluntary.  At all times during the interview process, Thunderhawk was treated in a professional and respectful manner.  A reasonable person under the circumstances would have felt free to terminate the interview and leave.  The Court expressly finds Thunderhawk was not in custody during the interview conducted by FBI Agent O'Neil on April 18, 2013.

## C.   **VOLUNTARINESS OF STATEMENTS**

Thunderhawk also contends the statements he made to law enforcement officers were involuntary.  A statement is involuntary when threats, violence, or express or implied promises sufficient to overbear the suspect's will and critically impair his capacity for self-determination are used.  Brave Heart, 397 F.3d at 1040.  The Court is required to examine the totality of the circumstances, including the conduct of law enforcement officers in exerting pressure to confess, and the defendant's ability to resist the pressure to determine if the suspect's will is overborne.  A statement is also involuntary if it was extracted through the use of physical or psychological pressure.  United States v. Bordeaux, 400 F.3d 548, 560 (8th Cir. 2005).  The Government bears the burden of proving a suspect's statements were made voluntarily by a preponderance of the evidence.  The Court cannot find "a statement was involuntary unless it is established that law enforcement officials engaged in coercive activity."  Id.

The Eighth Circuit has previously concluded statements made by an individual to an FBI agent in an unmarked vehicle were voluntary.  Id.  The vehicle Bordeaux was questioned in was an unmarked sport utility vehicle devoid of many of the potentially intimidating trappings of police cars, such as a divider between the front and back seats.  The vehicle was parked in front of Bordeaux's residence, not a secluded spot.  The tribal investigator did not actively participate in the interview, but merely observed the questioning from the back seat.  Bordeaux chose to speak in the vehicle rather than in his home, which showed the vehicle was not a coercive setting.  Similarly, in this case Thunderhawk was questioned by one FBI agent, the vehicle was parked in front of Thunderhawk's residence, and Thunderhawk voluntarily chose to enter the vehicle.

Thunderhawk further alleges the voluntariness of his statement becomes an evidentiary issue when the tactic of "a mid-interrogation turning on a tape recorder" to "summarize" or

"regurgitate" an alleged confession is used. See Missouri v. Seibert, 542 U.S. 600 (2004). However, the voluntariness of a recorded statement generally only becomes an issue when a defendant provides an initial statement to law enforcement, is read his *Miranda* warnings, and then provides a summary of the original statement. Id. at 609-17. In this case, Thunderhawk was not provided his *Miranda* warnings during the first interview. The Court has found Thunderhawk was not in custody for purposes of *Miranda*, and as a result such warnings were unnecessary. Further, FBI Agent O'Neil testified at the hearing held on April 16, 2014, that it is not customary to record all interviews with individuals. Once relevant information was obtained, Agent O'Neil decided to document a summary of the statement, which Thunderhawk approved. At no time was Thunderhawk in custody or under arrest, so the tape recording was merely a formality to summarize what had been discussed in the interview.

Considering the totality of the circumstances, the Court finds the statements made by Thunderhawk on April 18, 2013, were voluntary. The Government has sustained its burden of proof and has shown, by more than a preponderance of the evidence, that the statements were voluntary. Thunderhawk was approximately 62 years old at the time of the interview, had prior military experience, and at no time exhibited any indication he could not understand the advisements given prior to the first interview. He was not forced from his residence, and was given time to finish his personal needs prior to voluntarily exiting his residence and entering Agent O'Neil's vehicle. The doors to the vehicle were never locked and Thunderhawk sat in the front passenger seat with direct access to the unlocked door. Thunderhawk spoke openly and in a conversational manner about the events that occurred in 2008. Thunderhawk exited Agent O'Neil's vehicle in a normal state of mind, and was not under the influence of drugs or alcohol at the time of questioning, nor did he complain of any physical or mental disability which would have

affected the voluntariness of the statement. A careful review of the entire record and the totality of the circumstances clearly supports a finding that the statements provided by Thunderhawk to law enforcement officers on April 18, 2013, were voluntary in nature.

## III.   <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' arguments, the evidence presented at the suppression hearing, and the relevant case law. For the reasons outlined above, Thunderhawk's motion to suppress (Docket No. 19) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 2nd day of May, 2014.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **FINAL INSTRUCTIONS** |
| | ) | |
| vs. | ) | Case No. 1:13-cr-120 |
| | ) | |
| George Thunderhawk, | ) | |
| | ) | |
| Defendant. | ) | |

---

**GENERAL INSTRUCTIONS**                                                    **F-1**

Members of the jury, the instructions I gave you at the beginning of trial and during the trial remain in effect.  I will now give you some additional instructions.

You must continue to follow the instructions I gave you earlier, as well as those I give you now.  You must not single out some and ignore others, because <u>all</u> are important.  This is true even though many of those I gave you at the beginning of trial are not repeated here.

The instructions I am about to give you as well as those I gave you earlier are in writing and will be available to you in the jury room.  Again, <u>all</u> instructions, whenever given and whether in writing or not, must be followed.

## INFERENCES                                              F-11

You are to consider only the evidence in the case.  In your consideration of the evidence, you are not limited to the statements of the witnesses.  In other words, you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw, from facts which you find have been proven, such reasonable inferences as you feel are justified in light of experience and common sense.

Local AO 245B (Rev. 9/13) (AO Rev. 9/11)
Sheet 1

# UNITED STATES DISTRICT COURT

District of North Dakota

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| **GEORGE THUNDERHAWK** | ) Case Number:  **1:13-cr-120** |
| | ) USM Number: **12417-059** |
| | ) **Paul H. Myerchin** |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☑ was found guilty on count(s)   **One (1) of the Indictment.**
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC§§2244(a)(5) and 1153 | **Abusive Sexual Contact** | **December 2008** | **1** |

The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**September 8, 2014**

Date of Imposition of Judgment

Signature of Judge

**Daniel L. Hovland**     **U.S. District Judge**

Name and Title of Judge

*September 9, 2014*

Date

ADD-15

Local AO 245B (Rev. 9/13) (AO Rev. 9/11)
      Sheet 2 — Imprisonment

Judgment — Page   __2__   of   __6__

**DEFENDANT:  GEORGE THUNDERHAWK**
**CASE NUMBER:  1:13-cr-120**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**41 MONTHS, with credit for time served.**

☑ The court makes the following recommendations to the Bureau of Prisons:

**The Court recommends that the Defendant be placed in a low-security correctional facility, preferably at Sandstone FCI, located in Sandstone, Minnesota or Duluth FPC, located in Duluth, Minnesota or Yankton FPC, located in Yankton, South Dakota.**

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at  _____ ☐ a.m. ☐ p.m.   on  _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on  _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on  _____ to  _____

a  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

Local AO 245B (Rev. 9/13) (AO Rev. 9/11)
    Sheet 3 — Supervised Release

Judgment—Page    3    of    6

DEFENDANT: **GEORGE THUNDERHAWK**
CASE NUMBER: **1:13-cr-120**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**5 YEARS.**

       The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☑    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

       If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

       The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Local AO 245B (Rev. 9/13) (AO Rev. 9/11)   Case 1:13-cr-00120-DLH   Document 51   Filed 09/09/14   Page 4 of 6
Sheet 3C — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT: **GEORGE THUNDERHAWK**
CASE NUMBER: **1:13-cr-120**

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in psychological/psychiatric counseling and/or a sex offender program, which may include inpatient treatment as approved by the probation officer. The defendant shall abide by all rules, requirements and conditions of such program, including submission to risk assessment evaluations and physiological testing, such as polygraphs, and Abel testing, and shall take all prescribed medication.

2. The defendant shall grant a limited waiver of his right of confidentiality in any records of mental health treatment imposed as a consequence of this judgment to allow the treatment provider to provide information to the probation officer to monitor the defendant's progress.

3. The probation officer shall disclose the Presentence Report, and/or any previous sex offender or mental health evaluations to the treatment provider.

4. The defendant shall not be allowed to reside in the home, residence, or be in the company of any child under the age of 18; or date or socialize with anybody who has children under the age of 18, without the prior approval of the United States Probation Office.

5. The defendant shall not contact the victim by any means, direct or indirect, including in person, by mail or electronic means, or via third parties without written permission of the Court. If any contact occurs, the defendant shall immediately leave the area of contact, and immediately report the contact to the probation officer.

6. The defendant shall submit his person, residence, workplace, vehicle, computer, and/or possessions to a search conducted by a United States Probation Officer based upon evidence of a violation of a condition of supervision. Failure to submit to a search may be grounds for revocation, additional criminal charges, and arrest. The defendant shall notify any other residents that the premises may be subject to searches pursuant to this condition.

7. As directed by the Court, if during the period of supervised released the supervising probation officer determines the defendant is in need of placement in a Residential Re-Entry Center (RRC), the defendant shall voluntarily report to such a facility as directed by the supervising probation officer, cooperate with all rules and regulations of the facility, participate in all recommended programming, and not withdraw from the facility without prior permission of the supervising probation officer. The Court retains and exercises ultimate responsibility in this delegation of authority to the probation officer. See United States v. Kent, 209 F.3d 1073 (8th Cir. 2000).

DEFENDANT:  **GEORGE THUNDERHAWK**
CASE NUMBER:  **1:13-cr-120**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☑ The determination of restitution is deferred until **Nov. 17, 2014**.  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: **GEORGE THUNDERHAWK**
CASE NUMBER: **1:13-cr-120**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ __100.00__  due immediately, balance due

    ☐  not later than _____ , or
    ☑  in accordance    ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑  Special instructions regarding the payment of criminal monetary penalties:

    **All criminal monetary payments are to be made to the Clerk's Office, U.S. District Court, P.O. Box 1193, Bismarck, North Dakota, 58502-1193.**

    **While on supervised release, the Defendant shall cooperate with the Probation Officer in developing a monthly payment plan consistent with a schedule of allowable expenses provided by the Probation Office.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.